UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MARK A. WALLENFANG,

        Plaintiff,

  v.                                                   Case No. 08-C-288

JOHN J. HAVEL, CHRIS HAVEL,
and PETE PETASEK,

        Defendants.

**DECISION AND ORDER**

       This action arises under the Copyright Act of 1976 ("the Act"), as amended, 17 U.S.C. §§ 101 et seq. Plaintiff Mark Wallenfang sued defendants John Havel, Chris Havel and Pete Petasek for copyright infringement. Wallenfang, a photographer, alleges he owns copyrights on 283 photographs that were used without his permission in a book published by the defendants entitled *A Year of Champions: The 1996 Green Bay Packers*. He also alleges that a graphic design incorporating some fifteen of his photographs was used without his permission for the book's dust jacket or cover. Wallenfang seeks actual or, alternatively, statutory damages for copyright infringement and a permanent injunction restraining defendants from infringing his copyrights. The matter is presently before me on the defendants' motion to dismiss for lack of subject matter jurisdiction and cross-motions for summary judgment. The defendants first contend that the Court lacks subject matter jurisdiction because Wallenfang's purported claim of copyright infringement

is really nothing more than a contract claim in disguise. Wallenfang argues in response that subject matter jurisdiction clearly exists under 28 U.S.C. § 1338(a) because his claim is for copyright infringement, not breach of contract. Wallenfang further argues that the undisputed material facts establish that the defendants infringed his copyrights and he is entitled to judgment as a matter of law. The defendants oppose Wallenfang's motion for summary judgment and, in the event subject matter jurisdiction is determined to exist, seek summary judgment on their own behalf on the ground that Wallenfang is not entitled to statutory damages and cannot prove actual damages.

For the reasons that follow, I conclude that subject matter jurisdiction exists over Wallenfang's copyright claim. I also conclude that neither party is entitled to summary judgment on the grounds asserted. Accordingly, all of the motions before me will be denied.

**BACKGROUND**

The facts in this case are largely undisputed. Wallenfang is a professional photographer and for 14 seasons has photographed the Green Bay Packers for the *Packer Report* publication. (Pl.'s Proposed Findings of Fact ("PPFOF") ¶¶ 4, 5.) On or about May 20, 2005, Wallenfang, Chris Havel and former Green Bay Packer Gilbert Brown entered into a contract with Festival Foods, a Green Bay grocery store, to create and publish a book to be entitled *Return To Glory* to commemorate the Green Bay Packer football team's 1995-96 championship season. (*Id.* ¶ 14.) Under the terms of the agreement, Festival was to underwrite the production and printing costs for the book at Worzalla Publishing Company in Green Bay, provide a professional layout person, and then market, advertise and sell the finished product. (*Id.* ¶ 17.) Wallenfang was to provide photographs for use in the book on a one-time basis, and assist Chris Havel in the design and layout

2

of the book and dust cover. (*Id.* ¶ 18.) Gilbert Brown was to co-author the text with Chris Havel, set up interviews with other Packer players, and appear at promotional book signings. (*Id.* ¶ 19.) Finally, Chris Havel was to co-author the text with Gilbert Brown, assist on the layout and design, and appear at book signings with Gilbert Brown. (*Id.* ¶ 20.)

The Agreement provided that the book would be published on or before November 14, 2005. Upon execution of the agreement, Festival advanced Chris Havel $20,000 and Wallenfang $6,000 for the work they were to do in creating the book. (*Id.* ¶¶ 21-23.) Sometime thereafter, Wallenfang delivered to Festival two albums containing his proofs for the photographs he took during the 1995-96 season and began creating digital images of the photographs that were selected for use in the book. (Aff. of Christopher P. Riordan, Ex. B, Wallenfang Dep. at 12-13.) The project did not progress as scheduled, however, and no book was published by the November 14, 2005 deadline. Festival eventually terminated the agreement in May 2006. (PPFOF ¶¶ 25-27.)

After Festival pulled out of the arrangement, Wallenfang attempted to revive the project. (Riordan Aff., Ex. B, Wallenfang Dep. at 29-31.) Although the book had been intended to commemorate the ten-year anniversary of the Packer's 1995-96 championship season, the Super Bowl had taken place in 1996. If the book came out in 1996, the parties felt it could still be a success. Havel contacted defendant Pete Petasek, who agreed to underwrite one-half the printing costs in return for a share of the profits. John Havel, Chris' father also came on board and agreed to pay the other half of the costs of printing. (*Id.* at 27.) The goal was to complete the project and have it to Worzalla Publishing ready for printing in time for the Christmas season.

During the late summer and fall of 2006, as Petasek pushed Havel to continue writing the text, Wallenfang worked with the person hired to do the layout in an effort to complete the project

3

in time to get the book to Worzalla in time for a pre-Christmas release. (*Id.* at 26-29, 35-37.) By this time, the title had been changed to *A Year of Champions – 1996 Green Bay Packers* so as to avoid a trademark or copyright dispute. (*Id.* at 52.) As the deadline approached, Wallenfang worked "around the clock" scanning images and meeting with the graphic designer hired to do the layout. (*Id.* at 27-28.) Throughout this time, Wallenfang had numerous conversations with Chris Havel and Petasek about his compensation. Despite the absence of a written contract, he continued to work to get the book finished. (*Id.* at 26, 37.)

Finally, on October 25, 2006, with the book completed and ready to go to print, Petasek, or his attorney, drafted a one-page document entitled "Agreement," and Petasek faxed a copy of the Agreement to Wallenfang. (*Id.* at 26; Pl.'s Supp. PFOF ¶¶ 2-3.) The Agreement included the following language:

> This agreement between Mark A. Wallenfang, photographer, and Chris Havel, writer, grants Chris Havel the use of all images and photographs provided by Mark Wallenfang that will be used in the book: *A Year of Champions – 1996 Green Bay Packers*. The use of these photographs and images will be used on a one time use basis for this book only.

(Decl. of Michael T. Hopkins Ex. I.) The Agreement further provided that Wallenfang would receive fees of $7,500 for the photos, images and scanning of photos, royalties, and 50 books on the first printing of the book. (*Id.*) Two signature spaces, one for Wallenfang and one for Chris Havel, appeared at the bottom of the Agreement. On the same day he received the Agreement from Petasek, Wallenfang signed the Agreement and faxed it back to Petasek. (Pl.'s Supp. PFOF ¶ 3.) Chris Havel claims he signed the Agreement the same day as well. (Havel's Proposed Findings of Fact ("HPFOF") ¶ 16.)

4

Also on October 25, 2006, John Havel, Chris Havel, Petasek and Brown signed an agreement containing the following language:

> This agreement between Gilbert Brown and Chris Havel (co-authors) and Petasek Promotions and John Havel (Promoters) grants Petasek Promotions LLC and John Havel sole authority to print and reprint the book: A Year of Champions: The 1996 Green Bay Packers. If Petasek Promotions LLC and John Havel elect not to reprint the book "A Year of Champions: The 1996 Green Bay Packers", Gilbert Brown and Chris Havel may withdraw this permission and void this agreement.

(Decl. of Michael T. Hopkins Ex. J.) Neither John Havel nor Petasek have entered into any written agreements with Wallenfang concerning the use of his photographs in the Book.

Wallenfang had second thoughts about the terms of the Agreement almost immediately, and maintains that he revoked what he characterizes as his offer before he received any notice of acceptance by Chris Havel. (PPFOF ¶ 35.) Wallenfang claims he did not see a copy of the Agreement bearing Havel's signature until his deposition in this litigation. The parties agree that Wallenfang informed Petasek of his dissatisfaction with the Agreement, saying "it was not going to work," on October 26, 2006. (HPFOF ¶ 10.) On the same day, Wallenfang drafted a counter agreement which was never signed by any of the parties. (HPFOF ¶¶ 5-6.) Wallenfang never discussed signing this counter agreement with Chris Havel, but indicated in an email sent to Chris Havel and Petasek on October 28, 2006, that the "contract sent on Wednesday, October 25, 2006, is now null and void. One of these contracts must be signed." (HPFOF ¶¶ 11-12.)

In November 2006, Worzalla printed 10,340 copies of the book, of which 50 were delivered to Wallenfang by Petasek on November 14, 2006. (PPFOF ¶¶ 45-46.) Wallenfang signed a receipt for these copies of the book, which indicated that the books were "Received per Agreement." (Petasek Dep. Ex. 8.) Of the 10,340 printed copies of the book, defendants sold 5,933 and another

5

1,500 were conveyed as compensation to Brown or to repay advances made by Festival on the prior book project that never came to fruition. (PPFOF ¶¶ 61-63.) Wallenfang attended a kick-off party for the book in December of 2006 at which the book was marketed, and was aware of retailers attempting to sell the book. (HPFOF ¶¶ 24-27.)

Wallenfang registered his copyright in the photographs used in the book, effective August 7, 2007. (*Id*. ¶ 56.) He also registered his copyright in the book's cover design, with an effective date of November 24, 2006. (HPFOF ¶ 17.) The date of the book's first publication was November 14, 2006. (*Id*. ¶ 18.) Wallenfang never received any fees or royalties from any of the Defendants relating to publication of the book pursuant to the October 25, 2006 Agreement with Chris Havel, or otherwise. (PPFOF ¶ 49.) On November 27, 2006, Wallenfang sent John Havel a cease and desist letter via certified mail. (Pl.'s Supp. PFOF ¶ 5.) On December 1, 2006, Wallenfang sent John Havel an invoice for royalties. (*Id*. ¶ 6.)

## ANALYSIS

**I. Motion To Dismiss For Lack Of Subject Matter Jurisdiction**

Wallenfang asserts that federal jurisdiction exists under 28 U.S.C. § 1338(a), which states that "[t]he district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks." The sole claim set forth in the complaint is for copyright infringement. On the plain face of the complaint, then, it would seem clear that federal jurisdiction is present.

A party may advance a jurisdictional challenge, however, by either facial or factual attack. "Facial challenges require only that the court look to the complaint and see if the plaintiff has

6

sufficiently *alleged* a basis of subject matter jurisdiction." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009) (citing *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)). In the context of facial challenges to jurisdiction, "the court does not look beyond the allegations in the complaint, which are taken as true for purposes of the motion." *Id*. at 444 (citing *Lawrence*, 919 F.2d at 1529).

A factual attack, on the other hand, concedes that while the complaint is formally sufficient, there is in fact no subject matter jurisdiction. *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003). A party mounting a factual attack to jurisdiction may use affidavits and other material in support of a motion to dismiss under Rule 12(b)(1). *Id*. The party asserting jurisdiction bears the burden of proof on a Rule 12(b)(1) issue. *Id*. (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884 (3d Cir. 1977)). The court is free to weigh the evidence to determine whether jurisdiction exists. While an "inquest on jurisdiction" is not needed in every federal case, "if deficiencies in the pleadings, or facts brought out in pretrial discovery or at trial, fairly shriek that there is no federal jurisdiction, the district judge must conduct whatever supplementary factual proceedings are necessary to resolve the doubt." *Kanzelberger v. Kanzelberger*, 782 F.2d 774, 777 (7th Cir. 1986).

Here, the defendants mount a factual challenge to the court's subject matter jurisdiction over the dispute. They contend that "this case is wrongfully cast as a copyright infringement case, when in actuality the matter is a contract dispute and not within the jurisdiction of the federal courts." (Mem. Supp. Mot. To Dismiss at 1-2.) Noting that Wallenfang signed an agreement authorizing Chris Havel to use his photographs in the book, the defendants argue that this case is really over a

7

failure to pay a licensing fee. As such, they contend that this court lacks jurisdiction over the matter and the case should be dismissed.

The scope of federal subject matter jurisdiction over cases where copyright claims are intermeshed with contract disputes has been said to pose "among the knottiest procedural problems in copyright jurisprudence." 3 Melville B. Nimmer & David Nimmer, *Nimmer On Copyright* § 12.01[A] (2009). Just because a case involves a copyright does not mean that federal jurisdiction exists under 28 U.S.C. § 1338(a). 13D Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3582 (3d ed. 2008). For example, "a suit on a contract does not "arise under" the copyright laws even though a copyright may have been the subject of the contract." *Id.* at 738-39; *see also Scholastic Entertainment, Inc. v. Fox Entertainment Group, Inc.*, 336 F.3d 982, 985 (9th Cir. 2003). By the same token, a federal court is not deprived of jurisdiction over a copyright action just because it involves a question of contract law. *See, e.g., Scandinavian Satellite Sys. v. Prime TV Ltd.*, 291 F.3d 839, 844 (D.C. Cir. 2002) ("[W]hen a complaint alleges a claim or seeks a remedy provided by the Copyright Act, subject matter jurisdiction under § 1338(a) is not lost merely because a contract ownership dispute may be implicated."); *see also Bassett v. Mashantucket Pequot Tribe*, 204 F.3d 343, 347 (2d Cir. 2000) .

The majority of courts, including the Seventh Circuit, *see International Armor & Limousine Co. v. Moloney Coachbuilders, Inc.*, 272 F.3d 912, 915-16 (7th Cir.2001), have adopted the rule outlined by Judge Friendly in *T.B. Harms Co. v. Eliscu,* 339 F.2d 823 (2nd Cir. 1964), to determine if copyright subject matter jurisdiction exists. In *T.B. Harms* Judge Friendly stated:

> an action "arises under" the Copyright Act if and only if the complaint is for a remedy expressly granted by the Act, e.g., a suit for infringement or for the statutory royalties for record reproductions, or asserts a claim requiring construction of the Act ... or, at the very least and perhaps more doubtfully, presents a case where a

8

> distinctive policy of the Act requires that federal principles control the disposition of the claim.

339 F.2d at 828.

Applying that rule here, it is clear that federal jurisdiction exists. The sole claim asserted in the complaint is for infringement, and Wallenfang seeks remedies expressly granted by the Act. He seeks actual or statutory damages pursuant to 17 U.S.C. § 504, injunctive relief under 17 U.S.C. § 502, impoundment of the allegedly infringing Books under 17 U.S.C. § 503, and actual attorneys fees and costs pursuant to 17 U.S.C. § 505. Under the *T.B. Harms* test, federal jurisdiction under 28 U.S.C. § 1338(a) is present.

This is not to say that contract issues are not also presented. The defendants claim that their use of Wallenfang's photographs was with his permission, as set forth in the Agreement he signed; in other words, that they had a license to use them. If true, Wallenfang's copyright claim fails and the case will be dismissed. But the possibility that the copyright claim may fail does not mean federal jurisdiction is lacking. It is the subject matter of the dispute that determines whether federal jurisdiction exists, not the outcome. Wallenfang has not sued for breach of contract; indeed he denies a valid contract even existed. The fact that the court will be required to decide a contract issue in order to resolve Wallenfang's copyright claim does not deprive him of his right to a federal forum. Accordingly, the defendants' motion to dismiss for lack of subject matter jurisdiction is denied.

**II. Summary Judgment**

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact

9

and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party has the initial burden of demonstrating that it is entitled to summary judgment. *Id.* at 323. Once this burden is met, the nonmoving party must designate specific facts to support or defend its case. *Id.* at 322-24. In analyzing whether a question of fact exists, the court construes the evidence in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The mere existence of some factual dispute does not defeat a summary judgment motion, however; there must be a *genuine* issue of *material* fact for the case to survive. *Id.* at 247-48.

In this case, both Wallenfang and the defendants seek summary judgment. I will address Wallenfang's argument first.

**A. Plaintiff's Motion for Summary Judgment**

The defendants deny that they are liable to Wallenfang for copyright infringement because he signed the Agreement granting Chris Havel a license to use his photographs in the book. Had the Agreement been sent as an offer to Wallenfang by Chris Havel, the defendants would be correct in arguing that it constitutes a valid contract. A contract is formed when an offer is accepted by the offeree. *Zimmerman Bros. & Co. v. First National Bank*, 219 Wis. 427, 362-63, 263 N.W. 361 (1935). Wallenfang's sending the signed copy back to Havel would have constituted a valid acceptance of Havel's offer. *Id.* But Chris Havel did not draft the Agreement; nor did he send it to Wallenfang. Moreover, there is no contention that it was done on his behalf. As the record stands, the Agreement therefore cannot be considered Chris Havel's offer to Wallenfang. By signing the Agreement and sending it back, Wallenfang in effect conveyed an offer to Chris Havel. In order to create a contract, Chris Havel needed to accept the offer while it was still open. *Larsen*

10

*v. Superior Auto Parts*, 275 Wis. 261, 269, 81 N.W.2d 505 (1957). And for an acceptance to be effective, it must be communicated to the offeror. *Phillips Petroleum Co. v. Taggart*, 271 Wis. 261, 273, 73 N.W.2d 482 (1955).

Although Wallenfang contends he withdrew from the Agreement before a contract was formed, he concedes that a factual dispute precludes granting summary judgment in his favor on that basis. Even assuming an enforceable contract was formed, however, Wallenfang argues he is nevertheless entitled to summary judgment because the defendants exceeded any license he is claimed to have granted under the Agreement. Assuming the Agreement to be valid, Wallenfang contends, it at most granted Chris Havel a non-exclusive license to use his photographs "on a one-time basis for this book only." (Pl.'s Br. In Supp. of Mot. for S.J. at 9 (quoting Agreement, Hopkins Decl., Ex. I.)) As a non-exclusive licensee, Wallenfang argues, Chris Havel had no authority to assign his rights or enter into a sublicense authorizing others to use his photographs. Since the undisputed evidence shows that John Havel and Pete Petasek actually published the book, Wallenfang contends that Havel exceeded the alleged license and all three of the defendants are liable for infringement of his copyrights. Alternatively, Wallenfang argues that under the terms of the Agreement, Chris Havel's license to use his copyrighted photographs was conditioned upon payment to him of the royalties promised. Because the defendants never met this condition, Wallenfang contends that they had no authority to use his photographs. (*Id.* at 9-10.)

Assuming the Agreement is valid, it is certainly broad enough to embrace the use of Wallenfang's photographs and dust jacket in the single printing of the book Wallenfang worked with Chris Havel to produce. As Wallenfang concedes, the Agreement, if valid, constitutes a non-exclusive license. (Pl.'s Br. In Supp. of Mot. for S.J. at 9.) A license is simply "leave to do a thing

11

which the licensor would otherwise have a right to prevent." *I.A.E., Inc. v. Shaver*, 74 F.3d 768, 775 (7th Cir.1996) (quoting *W. Elec. Co. v. Pacent Reproducer Corp.*, 42 F.2d 116, 118 (2d Cir. 1930))). In granting a license, "[t]he copyright owner simply permits the use of a copyrighted work in a particular manner." *I.A.E.,* 74 F.3d at 775. The fact that it is a non-exclusive license means that Wallenfang did not transfer ownership of the copyright to the licensee. *Id.* He merely gave permission to use the photographs for a particular purpose. In other words, Wallenfang retained the right to use his photographs himself and to allow others to use them.

A licensee can infringe a copyright by exceeding the scope of the license. *Id.* Wallenfang argues that the defendants exceeded the scope of the purported license he granted because the Agreement granted Chris Havel the use of his photographs in the book, whereas in fact the book was published by Petasek and John Havel. Since a license cannot be transferred without the consent of the owner, *see Gardner v. Nike, Inc.*, 279 F.3d 774, 780-81 (9th Cir. 2002), Wallenfang contends that all three defendants exceeded the scope of the license, assuming the Agreement is valid, and are liable for infringement.

The fact that Chris Havel and Brown contracted with Petasek and John Havel to print the book, however, does not constitute a transfer of the purported license to use Wallenfang's photographs. An author who is granted a license to use another's photographs in his book does not transfer that license by contracting with another to underwrite the printing and publication of the book. *See I.A.E.*, 74 F.3d at 778 ("In our case, however, the record contains written authorization for the use of Mr. Shaver's copyrighted drawings to 'describe the agreed scope of the Project' for Joint Venture and the Airport. The use of his drawings was therefore within the scope of that agreement."). Here, the license granted by the Agreement was for "the use of all images and

12

photographs provided by Mark Wallenfang that will be used in the book: *A Year of Champions – 1996 Green Bay Packers*." (Decl. of Michael T. Hopkins Ex. I.) It was clear from the events leading up to the publication that Petasek and John Havel were going to finance the first printing of the book (they were recruited for that very purpose), and they apparently wanted to preserve a right to remain involved if the book proved successful and a second printing was done. As it turned out, there was no second printing. Given these facts, Wallenfang's argument that the defendants' actions exceeded the scope of the license granted under the Agreement is without merit.

The same is true of Wallenfang's argument that the defendants' failure to pay him the royalties due under the Agreement rendered the purported license granted therein void. This issue was also addressed by the Court in *I.A.E., Inc. v. Shaver*. In *I.A.E.* the copyright owner argued that an implied license did not spring into existence because the licensee had only paid him half the sum called for under the contract. Noting that in *Effects Associates, Inc. v. Cohen*, 908 F.2d 555 (9th Cir.1990), *cert. denied*, 498 U.S. 1103, 111 S.Ct. 1003, 112 L.Ed.2d 1086 (1991), the Ninth Circuit rejected a virtually identical argument, the *I.A.E.* Court adopted its analysis in rejecting the copyright owner's argument that complete payment of the contractual consideration was a condition precedent to the use of the copyrighted material. The Court acknowledged the principle that "conditions precedent are disfavored and will not be read into a contract unless required by plain, unambiguous language," *I.A.E.*, 74 F.3d at 778 (quoting *Effects*, 908 F.2d at 559 n. 7). Finding nothing in either the language of the contract or the copyright owner's conduct that would support such an interpretation, the *I.A.E.* Court concluded the implied license was not conditioned on full payment.

13

The same conclusion follows here. Nothing in the language of the Agreement suggests that the license granted by Wallenfang was conditioned upon payment of the royalties promised in the Agreement. If the Agreement is valid, Wallenfang's remedy is for its breach, not copyright infringement. Accordingly, Wallenfang's motion will be denied.

For completeness, however, I also note that even if an enforceable written agreement was not reached by the parties, it is not clear that Wallenfang will prevail. As the Seventh Circuit made clear in *I.A.E., Inc. v. Shaver*, a nonexclusive copyright license may be granted orally or by implication. 74 F.3d at 775 (citing *Effects Assocs., Inc. v. Cohen*, 908 F.2d 555, 558 (9th Cir.1990)); see also 3-10 *Nimmer on Copyright* § 10.03 ("By negative implication, nonexclusive licenses may therefore be granted orally, or may even be implied from conduct."). "[A]n implied license is 'a creature of law much like any other implied-in-fact contract.'" *I.A.E.*, 74 F.3d at 776 n. 11 (quoting *Effects*, 908 F.2d at 559 n. 7). If an implied license were found to have arisen here, Wallenfang's infringement claim would fail as a matter of law. *See also Oddo v. Ries*, 743 F.2d 630, 634 (9th Cir.1984) ("We conclude that Oddo, by preparing a manuscript based on his preexisting articles as part of his partnership duties, impliedly gave the partnership a license to use the articles insofar as they were incorporated in the manuscript, for without such a license, Oddo's contribution to the partnership venture would have been of minimal value.").

Alternatively, it is also arguable that the book itself constitutes a "joint work" within the meaning of the Act. *See* 17 U.S.C. § 101 ("A 'joint work' is a work prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole."). This would also mean that Wallenfang's claim would fail since "[t]he authors of a joint work are co-owners of copyright in the work," 17 U.S.C. § 201(a), and a joint copyright

14

owner cannot sue his or her co-owner for infringement. *See Donna v. Dodd, Mead & Co.*, 374 F. Supp. 429, 430 (S.D.N.Y. 1974) (holding that children's book for which plaintiff provided the text and defendant provided the illustrated photographs was a joint work in which each party owned an undivided ownership and thus neither could be held liable to the other for copyright infringement). Under either scenario, Wallenfang's copyright infringement claim would fail notwithstanding the validity of the Agreement, and any remedy he would have would arise under state law. Because the parties have not briefed these issues, however, I decline to address them further.

### B. Defendants' Motion for Summary Judgment

The argument for summary judgment advanced by the defendants is also ultimately unconvincing. While it is true that the failure to register the copyrights on the photographs used in the book until after the grace period allowed under 17 U.S.C. § 412(2) means Wallenfang is not entitled to statutory damages, the same does not apply to his copyright on the graphic design used on the cover. The dust cover, which incorporated fifteen of the photographs used in the book was registered on November 24, 2006, well within the grace period. Thus, statutory damages may be available for infringement of at least that copyright.

Even if statutory damages are unavailable, the Act allows a copyright owner to recover actual damages and the infringer's profits as a remedy for infringement. 17 U.S.C. § 504(a). Moreover, "[i]n establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work." 17 U.S.C. § 504(b). It seems unlikely that expert testimony would be required to prove the defendants' gross revenue, since they have already testified as to the number of books they sold and

15

the price they charged. (PPFOF ¶¶ 58 - 64.) Finally, even if the defendants were able to prevail on Wallenfang's claims for damages, he also seeks relief under 17 U.S.C. §§ 502 (injunction) and 503 (impoundment) of the Act. Thus, even without live damage claims, the defendants would not be entitled to summary judgment.

An additional argument that could support summary judgment in their favor is offered by the defendants in their Brief in Opposition to Wallenfang's motion for summary judgment. They argue that Wallenfang waived his claim for copyright infringement or is equitably estopped from asserting it as a result of his failure to seek injunctive relief to prevent sales of the book or at least complain to the defendants. Wallenfang was aware that the book was being sold, they argue, because of the various promotions and book signings that took place shortly after the book's release. Yet, he failed to voice any objections. Under these circumstances, the defendants argue he should be estopped from asserting a copyright infringement claim against them. (Br. In Opp. To Pl.'s Mot. For S.J. at 13-15.)

The record does not support summary judgment in favor of the defendants on this ground either. Not only did Wallenfang advise the defendants in emails sent before the book was published that in his view the Agreement was null and void, he also sent cease and desist letters to John Havel and Worzalla Publishing less than a month after publication. This is hardly conduct that would have led the defendants to believe that Wallenfang intended to induce them to continue the allegedly infringing conduct. *See Carson v. Dynegy, Inc.*, 344 F.3d 446, 453 (5th Cir. 2003) (holding that to establish estoppel defense to copyright infringement defendant must prove, *inter alia*, that plaintiff intended that its conduct would be acted on or so acted that defendant has a right to believe that it

16

was so intended). Accordingly, the defendants' motion for summary judgment will be denied as well.

## CONCLUSION

For the reasons set forth above, the defendants' motion to dismiss for lack of subject matter jurisdiction is **DENIED**. Both motions for summary judgment are also **DENIED**. The clerk is directed to set this matter for a Rule 16 conference to address further proceedings.

**SO ORDERED** this    13th    day of April, 2010.

                                                               s/ William C. Griesbach
                                                               William C. Griesbach
                                                               United States District Judge