UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MARK A. WALLENFANG,

      Plaintiff,

  v.                            Case No. 08-C-288

JOHN J. HAVEL, CHRIS HAVEL,
and PETE PETASEK,

      Defendants.

**DECISION AND ORDER DENYING MOTION FOR RECONSIDERATION**

This matter comes before the Court on Plaintiff Mark Wallenfang's motion for reconsideration of the decision and order denying Wallenfang's motion for summary judgment. (Dkt. 55.) Plaintiff argues that three separate issues deserve reconsideration: (1) whether the agreement signed by Plaintiff on October 25, 2006 contained a condition precedent to Defendant Chris Havel's use of his photographs; (2) whether Havel's failure to pay Plaintiff royalties promised in the agreement caused a rescission of that agreement; and (3) whether Havel exceeded the scope of the October 25, 2006 agreement by entering into a subsequent agreement with Petasek Promotions LLC and John Havel for publication of the book. Defendants John Havel and Pete Petasek have settled with Wallenfang and have been dismissed from this lawsuit. (Dkt. 80 and 82.) Havel is proceeding pro se and has not submitted a brief in opposition to Plaintiff's motion for reconsideration. The pending motion is therefore fully briefed and ripe for disposition. For the reasons stated herein Plaintiff's motion will be denied.

**BACKGROUND**

The facts in this case are largely undisputed and are reviewed in detail in this Court's decision and order denying summary judgment. (Dkt. 55 pgs. 2-6.)

**STANDARD**

A motion for reconsideration serves a very limited purpose in federal civil litigation; it should be used only "to correct manifest errors of law or fact or to present newly discovered evidence." *Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 251 (7th Cir. 1987) (quoting *Keene Corp. v. Int'l Fidelity Ins. Co.*, 561 F. Supp. 656, 665-66 (N.D. Ill. 1976), *aff'd* 736 F.2d 388 (7th Cir. 1984)). "A 'manifest error' is not demonstrated by the disappointment of the losing party. It is the 'wholesale disregard, misapplication, or failure to recognize controlling precedent.'" *Oto v. Metro. Life Ins. Co.,* 224 F.3d 601, 606 (7th Cir. 2000) (quoting *Sedrak v. Callahan,* 987 F. Supp. 1063, 1069 (N.D. Ill. 1997)). Such motions are disfavored and should be "rare." *Bank of Waunakee v. Rochester Cheese Sales, Inc.,* 906 F.2d 1185, 1191 (7th Cir. 1990).

**ANALYSIS**

**A. Express Condition Precedent**

Wallenfang contends that language in the Agreement constitutes a condition precedent. In his motion to reconsider, Wallenfang suggests that this Court's reliance on *I.A.E., Inc. v. Shaver*, 74 F.3d 768, 775 (7th Cir.1996), and *Effects Associates, Inc. v. Cohen,* 908 F.2d 555 (9th Cir. 1990, *cert denied* 498 U.S. 1103 (1991), is inappropriate. These two cases are distinguishable, Wallenfang argues, because in those cases the copyright owners delivered their copyright protected

material to defendants without reservation. Wallenfang alleges he put reservations on the delivery of his photographs to Chris Havel. Specifically Wallenfang points to the clause that states "in return for the photographs and images used in said publication, Mark A. Wallenfang will receive the following . . ."

This Court fully addressed Wallenfang's argument that the Defendants' failure to pay him the royalties due under the Agreement rendered the purported license granted therein void. The Court held that nothing in the language of the Agreement suggests that the license granted by Wallenfang was conditioned upon payment of the royalties promised in the Agreement. Assuming the Agreement is valid, the Court noted that Wallenfang's remedy is for its breach, not copyright infringement. Accordingly, Wallenfang's motion for summary judgment was denied.

A condition precedent is an act or event that must exist or occur before a duty to perform a promise arises. John D. Calamari and Joseph M. Perillo, *The Law of Contracts* § 11.5, 4th ed. 1998. For purposes of this analysis it is necessary to assume that the Agreement between Wallenfang and Chris Havel was valid in the first place. (See Decision and Order denying summary judgment, Dkt. 55 at 11.) With such an assumption in mind, it bears noting that Wallenfang himself attempted to revive the book project after Festival Foods pulled out. He provided photographs and worked long hours on the book's layout before the parties had any written agreement. Indeed, the project was essentially complete by the time a proposed agreement was tendered to Wallenfang for his signature. The Agreement Wallenfang signed on October 25, 2006 granted Chris Havel "the use of all images and photographs provided by Mark Wallenfang that will be used in the book" and provided that Wallenfang, in return, would receive fees of $7,500 for the photos, images, and scanning of photos, royalties of $1 per book for all sales in excess of 2,500 copies, and 50 books

3

on the first printing of the book. By the time Wallenfang signed the Agreement he had already provided the photos and the book was ready to go to the printer. Moreover, the plain language of the proposed agreement stated that "Wallenfang *will* receive the following" for photographs that "*will* be used in the book" (emphasis added in both). In other words, the parties contemplated that Wallenfang would be paid after the publication of the book and not as a condition precedent to the use of his photographs. Even if the language was ambiguous, "conditions precedent are disfavored and will not be read into a contract unless required by plain, unambiguous language," *I.A.E.,* 74 F.3d at 778 (quoting *Efffects,* 908 F.2d at 559 n.7). It thus follows that, on the issue of whether there was an express condition precedent in the Agreement, Wallenfang's motion for reconsideration cannot be granted because it fails to raise manifest errors of law or fact and does not present newly discovered evidence.

**B. Rescission for Failure to Pay Royalties**

Wallenfang next argues that Havel's failure to pay him any of the amounts due under the Agreement, assuming it was valid in the first place, constitutes a material breach that would provide grounds for rescission. In *J.D. Edwards & Co. v. SNE Enterprises, Inc.*, 1995 WL 688707, *5 (N.D. Ill.), the court held that the defendants failure to pay ninety percent (90%) of the licensing fee for a software package would constitute a material breach of the licensing agreement that created a right of rescission. Applying the same rule here, Wallenfang argues that Havel's use of his photographs without making any of the payments due allows him to rescind the Agreement and sue for copyright infringement.

Rescission is an equitable remedy available at the discretion of the court to restore the parties to the positions they would have occupied at the time the rescinded contracts were formed. *See Bucciarelli-Tieger v. Victory Records, Inc.*, 488 F.Supp.2d 702, 712 (N.D.Ill. 2007). Under Wisconsin law, a party may rescind a contract "if the other party has breached the contract in a substantial manner so serious as to destroy the essential objects or purposes of the contract." *Manpower, Inc. v Mason*, 405 F. Supp.2d 959, 969 (E.D. Wis. 2005) (quoting Wis. JI-Civil § 3076 (2001)). It is "well established that a material breach by one party may excuse subsequent performance by the other." *Mgmt. Computer Servs., Inc. v. Hawkins, Ash, Baptie & Co.*, 206 Wis.2d 158, 183, 557 N.W.2d 67 (1996)). Not any breach will warrant rescission, however; for rescission to be granted, the breach or breaches must "destroy the essential object of the contract." *Appleton State Bank v. Lee*, 33 Wis.2d 690, 693, 148 N.W.2d 1 (1967). "In determining whether a party's breach or breaches destroys the essential object of the contract, a court may consider the character of the promised performance, the purposes it was expected to serve and the extent to which nonperformance has defeated those purposes." *Manpower*, 405 F. Supp.2d at 970 (citing *M & I Marshall & Ilsley Bank v. Pump*, 88 Wis.2d 323, 333, 276 N.W.2d 295 (1979)).

Wallenfang's argument is based on the assumption that his contract with Havel was simply a licensing agreement under which Havel was required to pay him for the use of his photographs. But the original agreement between the parties called for Wallenfang and Havel to work together to produce a book commemorating the Green Bay Packers' 1995-96 championship season. It is at least arguable, if not an undisputed fact, that this was the agreement Wallenfang attempted to revive after the original deadline was missed and Festival Foods abandoned the project. (Wallenfang Dep. at 32-34.) This agreement, the agreement to work in tandem to create a commemorative book, was

5

substantially performed by the time Wallenfang received the proposed written agreement stating how he was to be compensated. By that time, Wallenfang had, as he noted, worked "around the clock" scanning images and meeting with the graphic designer hired to do the layout. Havel had also completed his part in interviewing players and writing the text. At this stage, it was impossible to restore the parties to their previous positions. It would also be inequitable. Accordingly, Wallenfang would not be entitled to rescind the agreement between the parties if, as appears likely, it was more than a mere licensing agreement.

**C. Exceeding the Scope of the Agreement**

Finally, Wallenfang asks this Court to reconsider its denial of summary judgment on the grounds that Chris Havel allegedly exceeded the scope of the express or implied non-exclusive license. Specifically Wallenfang takes issue with the fact that Chris Havel, the recipient of the license to use the photographs for the book, did not have authority to license the publication rights for the book to third parties. Essentially Wallenfang's argument is that while Chris Havel had the right to use the photographs, he did not have the right to allow others to use the photographs.

Plaintiff argues that there has been no proof presented that his permission for Chris Havel to use the photographs contemplated more than a "one time use." Therefore, the argument goes, Defendant Chris Havel did not have authorization to grant Petasek Promotions and John Havel the right to reprint the book. By exceeding the scope of the license Plaintiff maintains that Defendant Havel infringed on Plaintiff's copyright.

This Court rejected this exact argument in its decision denying Wallenfang's motion for summary judgement, discussing it in detail. There, I noted that "[a]n author who is granted a license

6

to use another's photographs in his book does not transfer that license by contracting with another to underwrite the printing and publication of the book." (Decision and Order denying summary judgment, Dkt. 55 at 12-13.) This is even more clearly the case if, as suggested above, the agreement between the parties was not a mere licensing arrangement but an agreement to jointly create and publish a commemorative book about the Packers' 1995-96 championship season. The essential purpose of the agreement was to create and publish a book using Wallenfang's photographs and text provided by Havel so that it would be available for purchase by the Christmas shopping season. Havel certainly didn't exceed his authority under the agreement by contracting with the investors they had lined up to print the book. Whether a second printing of the book would have exceeded Havel's authority is immaterial since no second printing occurred. Accordingly, I find no reason to reconsider my previous decision.

## CONCLUSION

Accordingly, and for the reasons set forth above, Plaintiff's motion for reconsideration is **DENIED**. The Clerk is directed to set this matter for a telephone conference for further scheduling.

**SO ORDERED** this ___1st___ day of October, 2010.

     s/ William C. Griesbach
     William C. Griesbach
     United States District Judge